THE PEOPLE v. NOLASCO.

APPEAL from the District Court of San Juan.

No. 75.—Decided June 29, 1906.

CRIME AGAINST THE EXECUTIVE POWER—BRIBERY.—The principles that apply to the crimes of receiving and of offering bribes are very similar, as the law aims to prevent the corruption of its officers and punishes the bribe taker as well as the person who offers the bribe.

*i*

ID.—INSULAR POLICE.—The offering of money to an insular policeman by the defendant to secure immunity from prosecution for playing a prohibited game, constitutes the crime defined by section 82 of the Penal Code, and it is not necessary, in order to establish the guilt of the defendant, to show that such a game was played, nor does the fact that no such game was played affect the question of his guilt, because whether he was innocent or guilty of gambling, if he made the offer in the manner indicated, he committed the crime of bribery.

ID.—The case referred to in the foregoing paragraph, even supposing that the crime sought to be prosecuted was not committed, or in fact that no other crime was committed, however, an offer made at the time the police were considering the propriety of arresting those persons whom they considered guilty, in order to induce them not to make any arrest, constitutes the crime defined in section 82 above cited.

EVIDENCE—CREDIBILITY OF WITNESSES.—The credibility of witnesses cannot be attacked by showing facts which in nowise affect their veracity.

ID.—CONTRADICTORY TESTIMONY—APPEAL.—The fact that the testimony of witnesses testifying before the court are contradictory, does not constitute an error which would warrant the reversal of the judgment, because the credibility of the witnesses is a matter to be determined by the trial court, and its decision should not be modified unless the statements of witnesses are manifestly incredible, or their credibility has been impeached in accordance with law.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from the District Court of San Juan. In that court the *fiscal* presented an information substantially as follows:

"The *fiscal* files an information against Pedro Nolasco for a crime against the executive power (felony), committed as follows: The said Pedro Nolasco, on or about the 1st day of May, 1905, in the judicial district of San Juan, offered to Ramón Santos, an insular policeman, the sum of $10 in order that he should not present an accusation against him for playing prohibited games. This act is contrary to law in such case provided and against the peace and dignity of The People of Porto Rico.—Luis Campillo, district attorney.

"The foregoing information is based on the testimony of witnesses examined under oath by the judge, and I solemnly believe that there is just cause for filing the same in the court."

The case was brought to trial on the 14th of November, 1905. Two witnesses for the prosecution testified, and four for the defense, besides the defendant. After the *fiscal* had finished with his evidence, the attorney for the defendant

made a verbal motion to the court, asking that the case be dismissed for lack of sufficient proof. The court overruled the motion. At the end of the trial, the case having been tried without a jury, the court declared the accused guilty of the crime charged. Subsequently on the 17th of November, 1905, the court sentenced the prisoner to one year in the penitentiary at hard labor.

There was evidence at the trial tending to show that the appellant, who is a saloonkeeper in Santurce, had offered Ramón Santos $10 in order that the latter should not prosecute him, and that a game of cards had been played in the room in which the offer was made and into which the policeman entered.

In this court the appellant presents a bill of exceptions to the refusal of the court to grant the motion that the case be dismissed for lack of proof. Likewise, there is presented a statement of facts.

From this statement it appears that the defendant previous to rendering sentence filed a motion for a new trial on the following grounds:

"First. Because it was proven at the trial that prohibited games were not being played at the house of Nolasco, and therefore he could not offer money not to be prosecuted for a crime which did not exist, this being supported further by the fact which was proven, that such crime of playing prohibited games was not prosecuted.

"Second. Because of the witnesses for the prosecution it has been shown that Ramón Santos, by his own confession, shows that his reputation as a person of honesty, veracity and integrity is bad.

"Third. Because section 82 of the Penal Code punishes the act of giving a bribe or making an offer with the purpose of influencing any act, decision, vote, opinion or other proceeding of an official in his official capacity, and the policemen, Santos and Comas, had not to do any act, decide any matter, vote upon the same, or give an opinion in regard thereto, involving Pedro Nolasco; and finally because the statement by the court as the principal basis upon which the verdict (sic) is rendered, that it is a general and pernicious custom to bribe policemen, and that such bribes in many cases are accepted, cannot be taken as a reason in law in a given case where such act has not

been proven, if the testimony of the two policemen is rejected, who, united by interest and *esprit de corps,* have made an accusation against Pedro Nolasco.''

With respect to the first point raised by the appellant, that it was proved that no prohibited game was being played, we are referred by the *fiscal* to the case of *People* v. *Marham,* 64 Cal., 157, decided under section 67 of the California Penal Code, which said section is substantially the same as section 82 of our own Penal Code. The court in that case discusses various decisions which bear on the facts of the case it had before it. Part of the opinion is a follows:

''But we think when a police officer receives money in consideration of his promise that he will not arrest anyone of a class of offenders against the criminal laws, he is guilty of receiving a bribe, because the case of one who has committed the offense, and the consequent duty of the officer to arrest is a matter which may be brought before him in his official capacity. We are of opinion that a police officer who shall receive a weekly stipend, or a single payment of money, in consideration of his promise not to arrest any violator of the gaming law, is not only morally guilty, but may be found guilty under the statute without his trial involving the necessity of the prosecution establishing the commission of a distinct crime by a third person together with a want of energy and efficiency on the part of the officer in securing the arrest of the third person.

''The scope of the definition of bribery is as broad as the duties of the officer who accepts the bribe. It is the duty of a police officer to arrest, with or without warrant, according to circumstances, every person who violates section 330 of the Penal Code. If, however, he agreed, in consideration of money paid him, not to arrest any person who should violate section 330, it would seem to the ordinary comprehension that he was bribed with respect to a matter which might be a subject of his official action.''

The court cited with approval the dissenting opinion of Mr. Justice Chilton, as follows:

''Two of the three judges of the Supreme Court of Alabama held, that while an offer to bribe a judicial officer was a grave offense at

the common law, yet under the statute (similar to ours) it was nec-
essary, to constitute the bribery, that there must have been an accept-
ance of the bribe; and also, it must appear that the cause or pro-
ceeding was pending before the justice when the offer was made, or
that the cause or proceeding was afterwards instituted, so that in the
ordinary course it would come before him.    Mr. Justice Chilton dis-
sented from his brethren upon both the points upon which their con-
clusion rested, and we concur with his view of the law.    He said:
'But I feel constrained to differ with my brethren as to the construc-
tion which they place upon the statute under which the conviction
was had.    In my judgment, it is not indispensable that the matter,
cause or proceeding in which the decision or judgment of the officer
is to be influenced by the bribe should afterwards be actually brought
before him, in order to constitute the offense.    But if the party cor-
ruptly give or promise any gift or gratuity whatever, with intent to
influence the act, vote, opinion, decision, or judgment of any officer,
whether executive, legislative or judicial, on any matter, cause or pro-
ceeding which may be then pending, or may by law come or be
brought before him in his official capacity, the crime is complete, al-
though the matter never should come before such officer.    The law, it
is well remarked, abhors the least tendency to corruption; and at
common law, attempts to bribe, though unsuccessful, were held in-
dictable.    (1 Russell on Crimes, 156; *United States* v. *Worrall,* 2 Dall.,
384; *Rex* v. *Plymtom,* 2 Raym. Ld., 1377; *Rex* v. *Vaughan,* 4 Burr.,
2494; affirmed in *Rex* v. *Polman et al.,* per Lord Ellenborough, 2
Camp., 230.)    It is true the intention to corrupt the justice in regard
to his anticipated action upon the case is not an offense which the law
can punish; but when that intention is evidenced by overt acts—when
the promise is complete to confer upon the officer the reward, as a
premium to incline him to act contrary to his duty, and in violation
of the known rules of honesty and integrity—the defendant has done
his part toward consummating the guilt, and the punishment inflicted
is not disproportioned to the demerit of his crime.    The matter, cause,
or proceeding must be one which may come before him, that is, comes
within his jurisdiction, or which may be brought before the officer, or
which may be pending at the time of the corrupt promise.    The
legislature, I think, did not intend that the prosecution should de-
pend upon the fact whether the officer actually had it in his power
to carry out the corrupt agreement before the indictment was ex-
hibited.    It is sufficient, I think, that the subject matter upon which
the bribe was to operate existed, and could legally be brought before

the officer in his official capacity. The offense consists in contempla-
tion of the statute in poisoning and corrupting the fountain of justice,
and although the particular deleterious consequence designed to be
effected by the parties has not ensued, the State, nevertheless, has an
officer corrupted, and society has lost all protection for its rights, so
far as the administration of the law by him is concerned.' ''

Thereafter the California court goes on to say:

''Here the duty of the defendant was to arrest those violating a
certain law, and the duty was one which he might at any time be
required to discharge. The matter might be presented to him for
official action. The sixty-seventh section of the Penal Code provides
that any person who gives or offers a bribe to any executive officer
with intent to influence him in respect to any act, etc., as such officer
is punishable. By the sixty-seventh section the offense defined is that
of one who offers; by the sixty-eighth, that of one who receives as a
bribe. If the witness who testified he paid money to the present de-
fendant was informed against, would it not be enough to allege in
the information that he paid the money in consideration of a promise
that the officer would not arrest any person for a violation of sec-
tion 330 of the Penal Code? His offense was complete. In the lan-
guage of Mr. Justice Chilton, 'The legislature did not intend that the
prosecution should depend upon the fact whether the officer actual-
ly had it in his power to carry out the corrupt agreement before the
indictment was exhibited.' ''

The only real difference between the facts of the California
case and the one at bar is that in the former the defendant was
accused and convicted of receiving a bribe, and in the latter
of offering one. The principles that apply to both offenses
are very similar, as the State aims to prevent the corruption
of its officers and punishes as well the brike taker as he who
offers the bribe.

With this decision in view we proceed to consider the prin-
ciples involved as applied to the case before us.

Even if it was not shown that a prohibited game was being
played, or if, as the appellant maintains, no such a game was
being conducted on the premises of Pedro Nolasco, neverthe-
less, he would have had no right to offer the policeman money

not to present an accusation against him. If there was a conflict of evidence as to whether a bribe had or had not been offered by Nolasco, the fact that no prohibited game had been played on his premises might have caused the judge to doubt whether Nolasco would offer a bribe when he had done nothing against the results of which he needed to be protected. Such considerations affect the weight of the evidence or the credibility of the witnesses; but the absence of a sense of guilt would not show that other inducements might not have operated on the mind of the appellant, inducing him to offer the bribe to which the two policemen testified. The defendant might have feared the results of an accusation, whether guilty or innocent, and therefore made the offer.

The question arises whether or not there could have been "any act, decision, vote, opinion, or other proceeding" required of the officer where no crime had been committed. Society commits to the hands of its executive officers certain duties, and policemen belong to this class. They must determine for themselves whether or not there are evidences of a crime having been committed. If after investigation they find what, in their judgment, amounts to the existence of an offense against the law, it may, and in most cases does, become their duty to arrest the supposed offender. The original arrest is an act to be performed by them, even if it should be shown ultimately that the judgment exercised by them was an altogether mistaken one.

In this case, according to the testimony of the prosecution, there was some evidence of a game having been played and the flight of the participants. If, then, while the officers were considering the advisability of an arrest, a bribe was offered them, it cannot be maintained that such offer was not made "with intent to influence" them "in respect to any act" on the theory that no act could be required if no crime had been committed.

The second ground for a new trial was that the policeman Ramón Santos was unworthy of belief, on his own confession.

He said that he no longer belonged to the police force; that he had offered his resignation; that it had not been accepted; and that then he so behaved as to induce his dismissal, and he was dismissed for disobedience of orders. None of these statements affects his credibility.

This ground of motion for a new trial, as well as the motion to dismiss for lack of proof, brings up the question as to whether the court ought to have found for the defendant on the evidence, and herein is involved the question of the credibility of the witnesses for prosecution. The two police-men differed somewhat in their recitals of when and how the defendant offered them the money, but there was enough in the testimony of either of them tending to show the offer of a bribe on the part of the defendant. The fact that they contradicted each other or that evidence was introduced to contradict them, would not constitute such an error as this court would revise. The credibility of the witnesses was a matter for the court below, and its finding should not be disturbed in the absence of an inherent improbability or some other manner of attacking the credibility of witnesses known to the law, but not attempted in this case.

It is unnecessary to allude to the matters presented in the third ground of the defendant's motion for a new trial, because the matters raised therein have been substantially discussed in considering the two preceding grounds.

We do not find any error in the record before us, and the sentence of the district court must be affirmed.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, Figueras and MacLeary concurred.